UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 6:13-CR-48-GFVT-HAI-3 |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| LESLIE CORNETT, ) | |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Court, on referral, considers reported violations of supervised release conditions by Defendant Leslie Cornett. *See* D.E. 363 at 2. District Judge Van Tatenhove imposed a judgment against Defendant on January 22, 2015, for conspiring to manufacture a mixture containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 846. D.E. 267 at 1. Defendant was sentenced to thirty-two months of imprisonment to be followed by three years of supervised release. *Id.* at 2–3.[1] Defendant began his term of supervised release on October 7, 2016.

In March 2018, Defendant's supervision was revoked after he was found guilty of the following violations: commission of a crime; failure to report an arrest to the United States Probation Office ("USPO"); and failure to report to the USPO. At that time, he was sentenced to six months of imprisonment, to be followed by two years of supervised release. D.E. 350 at 2–3. On August 22, 2018, Defendant was released from the custody of the Bureau of Prisons ("BOP") and resumed his term of supervision.

---

[1] Defendant's obligation to pay restitution in his underlying case was addressed by an amended judgment. *See* D.E. 309 at 5.

I.

On September 18, 2018, the USPO issued a Supervised Release Violation Report ("the Report") charging Defendant with violating two conditions of his release. The USPO then secured a warrant from Judge Van Tatenhove on September 19. D.E. 365. On October 1, the USPO issued an Addendum to the Report, which alleged Defendant had violated additional conditions of his supervised release. On October 15, the USPO issued a Second Addendum, charging Defendant with a fifth violation.

As described in the Report, the conduct underlying Violation Nos. 1 and 2 is similar in nature because both of the alleged violations involve Defendant's failure to follow the instructions of his probation officer. Specifically, Violation No. 1 alleges that Defendant violated the condition of his release that states: "You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame." As the basis for this violation, the Report states that, after Defendant was released from BOP custody on August 22, 2018, he did not report to the USPO within the 72-hour time frame required by this condition. Instead, Defendant met with U.S. Probation Officer Matthew Armstrong on August 27, 2018. This is a Grade C violation. *See* U.S.S.G. § 7B1.1(a)(3).

Similarly, Violation No. 2 alleges that Defendant violated the condition of his release that states: "After initially reporting to the probation office, you will receive instructions from the court or probation officer about how and when you must report to the probation officer, and you must report to the probation officer as directed." As the basis for this violation, the Report states that the Monday following Defendant's initial reporting was a federal holiday (September 3, 2018).

2

However, the following day, Defendant left a voice message with Officer Armstrong that said he was having car trouble.

On September 6, Officer Armstrong contacted Defendant by telephone and instructed him to report to the probation office on that date; Defendant told Officer Armstrong that he would try to come to the probation office. Because of Defendant's transportation issues, Officer Armstrong traveled to Defendant's home and made contact with his mother. She told Officer Armstrong that Defendant was not home, but that he had gone to Wooten Tire in order to repair his vehicle. Officer Armstrong asked Defendant's mother to have Defendant contact him. Based on the information provided by Defendant's mother, Officer Armstrong traveled to Wooten Tire, but he was unable to locate Defendant.

On September 10, Officer Armstrong reached Defendant's mother by telephone, and she advised that she was not aware of Defendant's location. Officer Armstrong again asked her to have Defendant contact him. On the same day, certified letters were mailed to Cornett's home address and post office box instructing him to report to the probation office on September 17, 2018, at 9 a.m. Defendant failed to appear at the designated time. This is a Grade C violation. *See* U.S.S.G. § 7B1.1(a)(3).

The two violations alleged in the Addendum are also similar in kind to one another, as both involve Defendant's admission to using methamphetamine. Here, Violation No. 3 alleges that Defendant violated the condition of his release that states: "You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court." As factual background, the Addendum states that, on September 27, Cornett signed a written

admission acknowledging his use of methamphetamine on numerous occasions, with the most recent use being September 25, 2018. This is also a Grade C violation. *See* U.S.S.G. § 7B1.1(a)(3).

Because methamphetamine is a Schedule II controlled substance, Violation No. 4 alleges that Defendant violated two mandatory conditions of his supervision: that he shall not commit another federal, state, or local crime, and that he must not unlawfully possess a controlled substance. As stated in the Addendum, "[d]ue to the defendant's prior drug conviction and with the Sixth Circuit Court of Appeals' ruling that use is the equivalent of possession, simple possession of methamphetamine constitutes conduct in violation of 21 U.S.C. § 844(a), a Class E Felony." This is a Grade B violation. *See* U.S.S.G. § 7B1.1(a)(2).

Finally, the Second Addendum charges Defendant with a fifth violation, again alleging that he violated the conditions of his release that he shall not commit another federal, state, or local crime, and that he must not unlawfully possess a controlled substance. Here, the Second Addendum states that, on October 3, 2018, Defendant was charged by a grand jury in Leslie County, Kentucky, with trafficking in a controlled substance, first degree. This conduct would constitute a Grade A violation. *See* U.S.S.G. § 7B1.1(a)(1).

II.

The Court conducted an initial appearance pursuant to Federal Rule of Criminal Procedure 32.1 on October 15, 2018. D.E. 366. During the hearing, Defendant made a knowing, voluntary, and intelligent waiver of his right to a preliminary hearing. *Id.* At that time, the United States made an oral motion for detention; Defendant did not argue for release. *Id.* Based on the heavy defense burden under 18 U.S.C. § 3143(a), the Court found detention was required. *Id.*

At the final hearing on November 29, 2018, Defendant was afforded all rights under Rule 32.1 and 18 U.S.C. § 3583.  D.E. 371.  The United States moved to dismiss Violation No. 5.  Accordingly, the Court will recommend that that violation be dismissed.

As to Violations No. 1 through 4, Defendant waived a formal hearing and stipulated to the violations as set forth in the Report and Addendum.  *Id.*  The Court found Defendant to be competent to stipulate to the violations and that the stipulation was knowingly, voluntarily, and intelligently made.  *Id.*  The Court also found the stipulation to be consistent with the advice of Defendant's counsel.  *Id.*

Of course, the Court must find "by a preponderance of the evidence that the defendant violated a condition of supervised release."  18 U.S.C. § 3583(e)(3); *see also United States v. Cofield*, 233 F.3d 405, 406 (6th Cir. 2000) ("In order to revoke supervised release, the sentencing court must find by a preponderance of the evidence that a defendant has violated a condition of his supervised release.").  Defendant's stipulation permits the Court to find that he engaged in conduct that is, at worst, a Grade B violation under the Guidelines.  *See* U.S.S.G. § 7B1.1(a)(2).

Concerning their recommended sentences for Defendant's violations, the parties varied by only a month of imprisonment.  While the United States argued that Defendant's supervised release should be revoked and that he should be sentenced to ten months of imprisonment, defense counsel recommended a sentence of nine months of imprisonment.  Both parties recommended that the Court impose on Defendant an additional year of supervision.

III.

Under 18 U.S.C. § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction.  Here, Defendant pled guilty to conspiring to manufacture a mixture containing methamphetamine, a Class C felony.  *See*

5

21 U.S.C. § 841(b)(1)(C); 18 U.S.C. § 3559(a)(3). For a Class C felony, the maximum revocation sentence provided under 18 U.S.C. § 3583 is two years of imprisonment. *See* 18 U.S.C. § 3583(e)(3). The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on Defendant's criminal history (at the time of his original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (internal citation omitted).

According to the Guidelines, "[w]here there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade." U.S.S.G. § 7B1.1(b). In this case, Defendant's admitted conduct qualifies as a Grade C violation with respect to Violation Nos. 1, 2, and 3. *See* U.S.S.G. § 7B1.1(a)(3). However, his admitted conduct qualifies as a Grade B violation with respect to Violation No. 4. *See* U.S.S.G. § 7B1.1(a)(2). Given Defendant's criminal history category of I (the category at the time of his conviction in this District) and a Grade B violation, Defendant's range, under the Revocation Table of Chapter 7, is four to ten months. *See* U.S.S.G. § 7B1.4(a). Both parties agreed to this calculation of the range.

Importantly, Congress does ***mandate*** revocation in a case of this nature. By statute, the Court must revoke Defendant's release because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). The Sixth Circuit clearly and repeatedly has equated drug use with drug possession, and Defendant's admitted use in this context undoubtedly results in application of 18

U.S.C. § 3583(g)(1). *See United States v. Hancox*, 49 F.3d 223, 224 (6th Cir. 1995); *see also United States v. Metcalf*, 292 F. App'x 447, 449 n.2 (6th Cir. 2008) ("Mandatory revocation was . . . warranted under § 3583(g)(1), as we have held that use of a controlled substance constitutes possession under that subsection."). The only exception would be if a suitable treatment option, or Defendant's record of involvement in treatment, warranted relief. *See* 18 U.S.C. § 3583(d); *Crace*, 207 F.3d at 835 (holding district court "required by 18 U.S.C. § 3583(g) to revoke the defendant's term of supervised release upon the defendant's positive drug test and admission of the use of a controlled substance unless defendant could come under the exception in 18 U.S.C. § 3583(d)"). Nothing in the record supports application of the exception.

IV.

The Court has reviewed the entire record, including the Report, Addendum, and Second Addendum and their accompanying documents, and Defendant's underlying judgment and sentencing materials. The Court has also considered all of the 18 U.S.C. § 3553(a) factors imported into the 18 U.S.C. § 3583(e) analysis, and the parties likewise addressed the statutory factors in making their sentencing recommendations to the Court. Upon review, the Court will recommend that Defendant's supervision be revoked and that he be sentenced to a term of imprisonment of nine months followed by one year of supervised release.

First, concerning the nature and circumstances of the underlying offense, Defendant pled guilty to conspiring to manufacture a mixture containing methamphetamine. *See* D.E. 192; D.E. 267. As confirmed by Violations No. 3 and No. 4, methamphetamine remains Defendant's drug of choice. The Court cannot ignore the nexus between Defendant's present admission to having used methamphetamine and his underlying offense of conspiring to manufacture it.

7

The Court next considers Defendant's history and characteristics. On this factor, the parties offered differing views of Defendant's conduct underlying these violations. Here, the government stressed that, although he ultimately admitted to using methamphetamine, Defendant only did so after the USPO undertook protracted efforts to locate him. The government also argued that Defendant's admission to having used methamphetamine on numerous occasions was an aggravating factor. In the government's view, Defendant has continued to show that he has no intention of interacting with his probation officer, as he is required to do.

Defense counsel, on the other hand, argued that Defendant's admission to having used methamphetamine numerous times was neither mitigating nor aggravating. Instead, defense counsel noted that Defendant was forthright and honest not only with his probation officer, but also with a law enforcement officer. Through its recommended sentence, the Court hopes to impart to Defendant that good things will happen to him if he is honest with the Court and his probation officer. Conversely, Defendant's failure to report to his probation officer as directed and to follow the conditions of his release prevents the Court from accomplishing any of the aims of having him on supervision. If Defendant does not learn to be honest with his probation officer, and to follow the directions he receives from the USPO, he places himself at an acute risk of continuing the cycle of revocation, imprisonment, and supervision.

The need to deter criminal conduct, both for Defendant and society, and the need to protect the public from further crimes heavily influence the Court's recommended sentence, specifically its recommendation of an additional term of supervision. Here, as discussed by the government, an individual can only procure methamphetamine through illegal means, such as illicitly purchasing or making it. Drug trafficking obviously hurts the public, and by continuing to use

methamphetamine, Defendant places himself at a greater risk of engaging in criminal conduct and at a grave risk of personal physical injury or death.

The Court must also consider whether a defendant needs any education, training, or treatment. On this record, it is apparent that Defendant is battling an addiction and that he needs help to overcome it. On this point, defense counsel explained to the Court that Defendant had success with a state drug-court program, but that he relapsed after his father died and after he lost his job.[2] To help Defendant confront his addiction head-on, the Court will recommend, as a condition of his supervised release, that Defendant complete a term of mandatory inpatient drug treatment, at a facility of the USPO's choosing.

The requirement that the Court seek to avoid unwarranted sentencing disparities among defendants with similar records who are found guilty of similar conduct is most often addressed by a recommended sentence within the Guidelines range. At Defendant's prior revocation, Defendant received a sentence in the middle of his advisory Guidelines range. *See* D.E. 345 at 4. Because he has again violated the conditions of his release, a lengthier term of imprisonment is warranted for this revocation.

In fashioning its recommended sentence, the Court must also consider whether an additional term of supervised release is warranted. Although there is no maximum amount of supervision that Defendant could receive for this violation, see 21 U.S.C. § 841(b)(1)(C), the Court will recommend that Defendant be placed on supervised release for a year following his release from custody. As the government argued, supervision acts as a roadblock to Defendant committing additional criminal behavior, and it provides repercussions should he continue to break the law and disregard the directions of his probation officer.

---

[2] The Court notes that Defendant previously successfully completed fourteen months of his supervised release. *See* D.E. 345 at 6.

9

Finally, the Guidelines suggest that the ***primary*** wrong in the supervised release context is violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* U.S.S.G. Chp. 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The breach of the Court's trust is weighty in this case. Indeed, Defendant's conviction on the underlying offense resulted in his first significant term of imprisonment. By continuing to shirk his responsibilities to comply with the conditions of his supervision, Defendant's conduct demonstrates little respect for the Court or the USPO. That disrespect has ramifications. The Court advised Defendant that harsh consequences will follow if he commits additional violations.

V.

Based on Defendant's admitted conduct, and in consideration of the factors discussed above, the Court **RECOMMENDS**:

(1) That, based on the government's motion, Violation No. 5 be dismissed;

(2) Defendant be found guilty of Violations No. 1 through 4;

(3) Revocation and imprisonment for a term of nine months; and

(4) One year of supervised release under the conditions contained in Defendant's prior revocation judgment (D.E. 350), with the added condition that, once Defendant is released from custody, he complete a term of inpatient substance-abuse treatment at a facility approved by the USPO and that he comply with all rules and requirements of the treatment program.

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. D.E. 371. Any waiver should comport with the Court's standard waiver form, available from the

Clerk. Absent waiver, the matter will be placed on District Judge Van Tatenhove's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

This the 5th day of December, 2018.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge